FILED _____ RECEIVED
ENTERED _____ SERVED
COUNSEL/PARTIES OF RECORD

JUN 2 3 2008

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY _____ DEPUTY

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

SCOTT ALLEN SLOANE,               )
                                  )          3:07-CV-0177-BES (VPC)
          Plaintiff,              )
                                  )
     vs.                          )          **REPORT AND RECOMMENDATION**
                                  )          **OF U.S. MAGISTRATE JUDGE**
CYNTHIA CRONE, et al.,            )
                                  )
          Defendants.             )          June 23, 2008
_____)

This report and recommendation is made to the Honorable Brian E. Sandoval, United States District Judge. Before the court is plaintiff's motion to set aside settlement agreement (#57).[1] Defendants opposed the motion (#62) and plaintiff replied (#64). As more fully set forth below, this court recommends that plaintiff's motion to set aside settlement agreement be denied.

**I.    Procedural History**

Plaintiff, Scott Allen Sloan ("plaintiff"), is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). At all times relevant to this action, plaintiff was housed at Lovelock Correctional Center ("LCC"). Plaintiff alleged two claims for relief against four NDOC defendants: Cynthia Crone, Eleanor Emmanuel, Robert LeGrand, and Jack Palmer.

In Count I of his first amended complaint, plaintiff alleges that defendant Crone ordered him moved to a different housing unit based upon a retaliatory motive after plaintiff filed a grievance against her (#43). Plaintiff further alleges that defendant Emmanuel knew of the retaliatory behavior, but failed to stop the retaliation. *Id.* In court II, plaintiff names defendants Emmanuel, LeGrand and Palmer in this count, and he alleges that on January 23, 2007, he was transferred from LLC to Ely State Prison ("ESP"), which was also based on a retaliatory motive. *Id.*

---

[1] Plaintiff styled his motion as "plaintiff's stipulation motion requesting the court not to dismiss with prejudice" (#57), and this court initially construed the filing as a motion to enforce settlement agreement and ordered the motion to be fully briefed (#59). Having reviewed the parties' points and authorities the court construes plaintiff's filing as a motion to set aside settlement agreement.

1         Central to plaintiff's claim of retaliation are bed moves between two protective segregation

2 units. Plaintiff contends that defendant Crone ordered these bed moves in bad faith and that he

3 refused to comply for that reason. Since plaintiff refused direct orders to transfer units, he was

4 disciplined. Plaintiff was eventually transferred to ESP after LLC staff concluded that plaintiff was

5 not suited for LCC.

6         On February 26, 2008, this court convened a settlement conference, and the parties reached

7 a settlement, which was memorialized in a written settlement agreement. *See* Exhibit 1, attached to

8 plaintiff's motion to set aside settlement agreement (#57). The settlement provided that plaintiff

9 would dismiss this action with prejudice, and the defendants agreed as follows:

10          5.      Defendants agree to the following:

11               (a)     Within ten days of the execution of this settlement agreement, Plaintiff will receive a full classification

12 hearing at High Desert State Prison (HDSP) before NDOC staff employed at HDSP;

13

14               (b)     Any decision reached the the full classification committee must be reviewed and approved by the Offender Management Division;

15

16               (c)     The Defendants are not guaranteeing any specific outcome with respect to the classification process;

17               (d)     Prior to receiving a full classification hearing, references to incidents related to Plaintiff's claims for

18 relief occurring at LCC between September 2006 and January 2007 will be removed from Plaintiff's file and

19 will not be considered by the classification committee;

20               (e)     At the hearing of the full classification committee, Plaintiff can make any request that he believes to be

21 in his best interests;

22               (f)     If the full classification committee determines that Plaintiff should be transferred to Northern Nevada

23 Correctional Center (NNCC), and such transfer is approved by the Offender Management Division,

24 Plaintiff will be housed in a double occupancy cell at NNCC; and

25

26               (g)     If the full classification committee at HDSP determines that Plaintiff should be transferred to an NDOC institution other than HDSP, Plaintiff will be

27 permitted to use two cardboard boxes in addition to a duffle bag for transportation of personal property.

28

6.   By way of this Agreement, Defendants make no admission of liability.

7.   The settlement reflected in this Agreement becomes effective upon its execution and the hearing of the full classification committee at HDSP.

#57, Ex. 1 at ¶¶ 5-7. Plaintiff and defendants' counsel signed the settlement agreement in late February, and on March 10, 2008, plaintiff was given a full classification hearing in accordance with that agreement. *See* Declaration of Warden Dwight Neven ("Neven declaration"), #62, Ex. B, ¶ 4. Prior to the hearing, NDOC staff blocked a total of eight case notes from plaintiff's records, which were the case notes from LCC concerning the events that occurred between September 20, 2006 and January 27, 2007 (#62). The disciplinary records for this time period were also blocked. *Id.* However, plaintiff's records continued to reflect that he was classified as a maximum custody inmate. *Id.*

At the commencement of the full classification hearing, plaintiff was advised that disciplinaries at LCC had been removed from his records and that they would not be taken into consideration during the hearing. Neven declaration, #62, Ex. B, ¶¶ 6-7. The full classification committee consisted of Associate Warden for Operations Isidro Baca, Correctional Casework Specicialist III Les Herndon, and Warden Neven. *Id.* At the conclusion of the hearing, the full classification committee recommended that plaintiff be transferred to general population at Northern Nevada Correctional Center, and the case note in NDOC's electronic records management system states:

> FCC - Held this date by Warden Neven, AWO Baca and CCS III Herndon I/M Sloane was present. This FCC was directed by the AG's office as a settlement agreement for the transfer to another institution. Also the disciplinaries from Nov. 1, 2006 and Dec. 11, 2006 have been removed from I/M's I-File. The results of the FCC was that this inmate should be transferred to NNCC so that he can take part in general population activities. He has been assigned to ad-seg ps for many years and now he wants to return to GP, at his request. I/M was advised that this transfer has to be approved by OMD.

*Id.* at ¶ 9.

1    Warden Neven attested that he did not consider the events that occurred at LLC between

2    September 2006 and January 2007, and to the best of his knowledge, neither did the remaining two

3    committee members. *Id.* at ¶ 10.

4    Pursuant to both the settlement agreement and NDOC policy, the Division of Offender

5    Management must approve classification changes. After reviewing the full classification hearing

6    committee's recommendation, the Division of Offender Management decided that Ely State Prison

7    ("ESP") is a more appropriate placement for plaintiff than NNCC. *See,* Declaration of Rex.R. Reed,

8    #62, Ex. C. Mr. Reed also attests that he did not consider any records from the time period in

9    question at LLC in making his decision; in fact, he still does not know the nature of those charges

10   at LCC. *Id.* at ¶¶ 10-16. Mr. Reed based his decision on the following factors:

11          1.   Plaintiff has an escape history;
            2.   Plaintiff is currently serving a life sentence; and
12          3.   During his previous placement at ESP, plaintiff refused to
                 integrate onto the general population yard.

13   *Id.* at ¶ 10. Mr. Reed explained that because plaintiff has a life sentence, there is nothing to deter

14   him from making an escape attempt, which conclusion is further supported by plaintiff's prior history

15   of an escape attempt. *Id.* at ¶ 11. Plaintiff's refusal to integrate into general population while at ESP

16   suggests that he has not had an opportunity to learn behavior appropriate for a prison yard setting,

17   and before he can be considered for an institution other than ESP, plaintiff must first prove he can

18   succeed on a prison yard. *Id.* at ¶ 12. Mr. Reed attests that this classification decision was based

19   solely on these factors, that the incidents at LCC were removed from plaintiff's record, and that he

20   does not know what occurred at LCC to this day. *Id.* at ¶¶ 13-14.

21   In addition to the full classification hearing, the settlement agreement also provided that in

22   the event plaintiff was transferred to another NDOC institution, he would be permitted two

23   cardboard boxes in addition to a duffle bag for transportation of personal property (#57, Ex. 1).

24   Notwithstanding this settlement provision, plaintiff contends that he encountered significant

25   problems in enforcing this provision of the agreement. However, after some initial difficulties, the

26   situation was resolved, and plaintiff was allowed to used the two boxes to transport his property (#62

27   at p. 5, n.1). Further, plaintiff alleges that he is now missing legal work for this action (#57), but

28

1  defendants advise that if plaintiff's legal work is not returned, defendants will copy and deliver the
2  legal papers to him (#62 at p. 5, n. 2).

3  **II.   Discussion and Analysis**

4      Courts have inherent authority to enforce settlement agreements between parties in pending
5  cases. *See Metronet Services Corp. v. U.S. West Communications*, 329 F.3d 986, 1013-1014 (9th Cir.
6  2003) (*cert. granted and judgment vacated on other grounds by Quest Corp. v. Metronet Services*
7  *Corp.*, 540 U.S. 1147 (2004); *Doi v. Halekulani Corporation*, 276 F.3d 1131, 1136-1138 (9th Cir.
8  2002); *Inre City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994).

9      To enforce a settlement agreement, two elements must be satisfied. *Marks-Foreman v.*
10  *Reporter Pub Co.*, 12 F.Supp 1089, 1092 (S.D.Cal. 1998). First, the settlement agreement must be
11  complete. *Id., citing Maynard v. City of San Jose*, 37 F.3d 1396, 1401 (9th Cir. 1994); *Doi*, 276 F.3d
12  at 1137. Second, the settlement agreement must be the result of an agreement of the parties or their
13  authorized representatives concerning the terms of the settlement. *Marks-Foreman*, 12 F.Supp at
14  1092, *citing Harrop v. Western Airlines, Inc.*, 550 F.2d 1143, 1144-1145 (9th Cir. 1977), *Doi*, 276
15  F.3d at 1137-1138. Were parties raise objections after the parties agree to a settlement, the court
16  may rightfully deny such objections. *Harrop*, 550 F.2d at 1144.

17      The court must first consider whether the settlement agreement was complete. *Marks-*
18  *Foreman, supra,* at 1092. In this case, as in *Doi,* 276 F.3d 1131, the parties spent several hours in
19  private and joint sessions and agreed to a settlement of this case. The parties and counsel then
20  reconvened in open court to place the material terms of the agreement into the record (#55).
21  Thereafter, defendants' counsel prepared a written settlement agreement, which plaintiff and
22  defendants' counsel signed (#57, Ex. 1). Thus, there is no dispute that the settlement agreement is
23  complete.

24      The court must next consider whether the settlement agreement was the result of an
25  agreement of the parties or their authorized representatives. *Marks-Foreman, supra,* at 1092. There
26  is no dispute that plaintiff and defendants' authorized representative agreed to the stated terms of the
27  settlement, which were later reduced to writing in a fully executed settlement agreement.

28

1    Plaintiff's contention appears to be that notwithstanding the clear terms of the settlement

2    agreement, defendants breached critical settlement terms (1) by failing to return plaintiff to medium

3    custody status *prior* to the full classification hearing, (2) by mentioning the fact that the disciplinaries

4    at LLC had been blocked at the beginning of the full classification hearing, and (3) by failing to

5    communicate that plaintiff was entitled to two additional boxes to move his property upon transfer

6    to another NDOC institution. Each is addressed in turn.

7    The settlement agreement did not require defendants to reduce plaintiff's custody status prior

8    to the full classification hearing; therefore, it was not an agreed upon term of the settlement. The

9    settlement agreement is clear on its face and contains no such provision. Moreover, the court

10   specifically recalls the settlement discussions in this matter and is well aware that it is NDOC's

11   policy *not* to agree to an automatic change of custody status as part of a settlement with an inmate.

12   Rather, NDOC may offer, as it did in this case, a full classification hearing without any guarantee

13   of an outcome. This is exactly what this settlement agreements provides: "The Defendants are not

14   guaranteeing any specific outcome with respect to the classification process." (#57, Ex. 1 at ¶ 5(c)).

15   Plaintiff's second contention is that defendants violated the settlement agreement when it was

16   announced at the beginning of the full classification committee hearing that the LCC disciplinaries

17   had been removed and would not be considered. The court disagrees. As Warden Neven attested

18   in his declaration, the purpose of the announcement was to insure that plaintiff knew that those

19   entries had been properly blocked from his record in accordance with the settlement agreement;

20   otherwise, plaintiff would have had no official notice on the record of that fact. Even more

21   compelling is the fact that the full classification committee recommended that plaintiff's custody

22   status be changed from maximum to medium custody and that he be transferred to Northern Nevada

23   Correctional Center. In other words, the committee voted in favor of plaintiff, and any prejudice he

24   may have suffered from the preliminary statement was harmless. The fact that the Division of

25   Offender Management overruled the full classification committee's recommendation is not a

26   violation of the settlement agreement, since the settlement agreement clearly provides that such a

27   review was required. The court finds no breach of the settlement agreement.

28

Finally, plaintiff contends that he experienced some difficulty in obtaining the two boxes for transporting property during his transfer to ESP and that he may have lost legal papers concerning this case. Although it is regrettable that there appears to have been a miscommunication among prison staff about the boxes, it was remedied. As for plaintiff's legal papers that may still be missing, the court recommends that defendants' counsel be directed to verify with plaintiff that he recovered all of his legal papers. In the event he has not, defendants should be required to provide copies of missing papers at defendants' expense. This incident does not constitute a breach of the settlement agreement.

### III.   Conclusion

Plaintiff received what he bargained for in the settlement agreement: 1) he was given a full classification committee hearing; 2) the objectionable disciplinaries were duly blocked from his record; 3) the full classification committee, in fact, recommended medium custody status and did not consider those disciplinaires: but, 4) the Offender Management Division overruled that recommendation. Defendants made no promises to plaintiff concerning the outcome of these proceedings, and plaintiff was aware that the outcome might not be favorable to him when he entered into the agreement. This was the bargain memorialized in the settlement agreement, the parties performed in accordance with that agreement, and plaintiff's dissatisfaction with the outcome of the agreed upon proceedings is no basis to set aside the agreement.

The parties are advised:

1.   Pursuant to 28 U.S.C § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.   This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

1    **IV.    Recommendation**

2        **IT IS THEREFORE RECOMMENDED** that the district court enter an order

3    **DENYING** plaintiff's motion to set aside settlement agreement (#57) and **DISMISSING** this

4    case with prejudice.

5        DATED:  June 23, 2008.

6

7                                         UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28